1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    LEANDRO HERNANDEZ,                )
                                       )
9              Petitioner,             )        No. C 03-4701 JSW (PR)
                                       )
10        vs.                          )        ORDER DENYING PETITION
                                       )        FOR A WRIT OF HABEAS
11   RUNNELS, Warden,                  )        CORPUS
                                       )
12             Respondent.             )
     _____   )
13
14
15                        **INTRODUCTION**
16          Petitioner, a state prisoner currently incarcerated at Salinas Valley State
17   Prison in Soledad, California, filed a *pro se* petition for a writ of habeas corpus
18   pursuant to 28 U.S.C. § 2254.   This Court ordered Respondent to show cause
19   why the writ should not issue (docket no. 2).  Respondent filed an answer to the
20   petition and a memorandum of points and authorities and exhibits in support
21   thereof (docket nos. 3-4).  Petitioner filed a traverse (docket no. 6).  Petitioner
22   claims that the admission of gang related evidence prejudiced his trial in violation
23   of due process.  Petitioner also challenges the trial court's use of CALJIC
24   17.41.1.  This order rejects both claims and denies the petition for writ of habeas
25   corpus on the merits.
26                    **PROCEDURAL BACKGROUND**
27          On May 22, 2000, a Santa Clara County jury convicted petitioner in
28   Superior Court of conspiracy, forgery, transporting methamphetamine,

possessing methamphetamine for sale, and being under the influence of methamphetamine. Petitioner admitted to four prior strike convictions and to having served three prior prison terms. On September 15, 2000, the trial court sentenced petitioner to 28 years-to-life in prison. The California Court of Appeal, Sixth Appellate District, affirmed the conviction on direct appeal on August 1, 2002. The Supreme Court of California denied a petition for review on October 16, 2002. Petitioner filed the instant petition on October 20, 2003.

## FACTUAL BACKGROUND

The facts underlying the charged offenses are summarized as follows:[1]

Petitioner drove his girlfriend, Tina Marie Hernandez, in her car to a Home Depot store where she attempted to buy merchandise with a fraudulent check. After the store manager confronted her about the check, Petitioner and Ms. Hernandez fled the scene in her car. While driving, Petitioner began arguing with another motorist. The two drivers stopped the cars, got out, and continued arguing. During the argument, the other motorist punctured a tire on Ms. Hernandez's car and left.

While Petitioner was changing the tire, police brought witnesses from the Home Depot who identified Ms. Hernandez from her attempt to pass the fraudulent check there. The police arrested her and searched her car, in which they found two purses: One containing $235 and the other containing methamphetamine residue. They also found a day-planner containing Petitioner's wallet, correspondence involving him, and an apparent list of telephone numbers with accompanying codes, one of which read "14-14." Inside the wallet was $1,300, Petitioner's J.C. Penney credit card, and an address book with methamphetamine residue on it. The police also found a black pouch containing a 27.91-ounce rock of methamphetamine along with a red cloth. They arrested Petitioner and tested his blood, which tested positive for methamphetamine.

Aug. 2, 2002 Slip Op. at 1-2.

A.   Gang-Affiliation Evidence

Police Officer Dan Livingston testified as the prosecution's narcotics and gang membership expert. Over Petitioner's relevancy objection, Officer Livingston testified that he could not discern a purpose for the red cloth in the black pouch except that the color red signifies a

---

[1] The facts in this section are derived from the Court of Appeal of the State of California, Sixth Appellate District, affirming the judgment of the Superior Court. *See People v. Hernandez*, No. H022226, slip op. at 1-5 (Cal. Ct App., Aug. 1, 2002).

2

color adopted by the Norteno gang and gangs will often put something of their color with drugs to establish ownership. He added that the Norteno gang has adopted the number 14 as its number from the letter "N" being the 14th letter of the alphabet.

The prosecutor then proffered to show the jury a tattoo on Petitioner's left wrist that depicted the words, "San Jo," followed by the letter "X" and the number "4." According to Officer Livingston, the letter and number meant 14 and, as a tattoo, signified membership in or association with the Norteno gang.

Petitioner objected on the basis of relevance and Evidence Code section 352. He urged: "[U]nder 352 I think this Court can weigh the probative value over the prejudicial effect, and I think in this case it's a highly prejudicial effect. There is very little evidence connecting Mr. Hernandez to the dope that was found on the seat, and at the very last minute the prosecutor is now trying to impugn gang activity on my client. Everybody knows that gang activity is something that is abhorred in society, particularly in San Jose where there have been gang problems. I think just raising the specter of gang activity when there's no – there's been no evidence of that I think is highly prejudicial, and I think the probative value is clearly outweighed by the prejudicial effect."

The prosecutor replied that the gang evidence was highly probative precisely because there was little evidence to link Petitioner to the drugs. She added that it was further probative given that she expected (1) Petitioner's girlfriend to testify that the drugs were hers and Petitioner did not know about them,[2] and (2) Petitioner's booking photograph showed Petitioner wearing the color red. She added that she did not intend to develop that Petitioner was, in fact, a Norteno gang member.

The trial court ruled that the gang related evidence was relevant, finding that the probative value on the issue of ownership exceeded the prejudicial connotations associated with indicia of gang activity. The trial court found that the absence of allegations of gang violence further mitigated the prejudicial effect.

Officer Livingston then testified about the tattoo and its significance, and Petitioner displayed the tattoo to the jury. However, the trial court issued a limiting instruction disallowing consideration of the evidence to establish whether Petitioner was a gang member and for any other purpose but for establishing Petitioner's connection to the charged crimes.

*Id.* at 2-3.

B.   CALJIC 17.41.1

The trial court advised the jury as follows: "The integrity of the

---

[2] Petitioner's girlfriend did so testify.

3

trial requires that jurors at all times during their jury deliberations conduct themselves as required by these instructions.  Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment or any other improperly basis, it is the obligation of the other jurors to immediately advise the Court."  (See CALJIC No. 17.41.1 (1998 new) (6th ed. 1996).)  Petitioner challenges the trial court's issuance of this instruction at trial.

*Id*. at 5.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application or, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently that the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*  As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable

4

application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), overruled in part on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous but objectively unreasonable); *Woodford v. Viscotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).

## DISCUSSION

### I.     Gang Affiliation Evidence

Petitioner claims that the trial court improperly permitted the prosecution

to introduce gang affiliation evidence to establish his possession of the methamphetamine recovered from Tina Marie Hernandez's car.  The California Court of Appeal evaluated the admission of evidence under state law and applied an abuse of discretion standard in denying this claim.  *Hernandez*, slip op. at 11-12.  The Court of Appeal upheld the trial court's admission of the evidence on the basis that its probative value exceeded its prejudicial effect under California Evidence Code section 352 since "any emotional bias was negligible in light of the limiting instruction and given that the case did not involve gang issues, particularly gang violence."  *Id*.

Petitioner contends that the trial court's improper admission of the gang-related evidence prejudiced his trial in violation of his constitutional due process rights.  This Court rejects Petitioner's claim.

### A.    Legal Standard

An error in the admission of evidence rises to the level of constitutional error if it is of such magnitude that it precludes the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan,* 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).  The inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  The admission of evidence is only so unfair that it threatens to violate due process if there are no permissible inferences that the jury may draw from it and it is of an inflammatory nature.  *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process.  *See Estelle v. McGuire*, 502 U.S. 62 75 n.5 (1991).  Accordingly, the Ninth Circuit has held that a

petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA based upon the Supreme Court's reservation of this issue as an "open question" in *Estelle*. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (state court's denial of due process claim concerning admission of petitioner's propensity for violence was not objectively unreasonable); *see also Id*. at 874-75 (McKeown, J., concurring in part and dissenting in part) (agreeing that there is no clearly established Supreme Court precedent that admission of propensity evidence violates due process, but concluding that Supreme Court's reservation of the issue does not automatically foreclose petitioner's claim).

Due process permits a jury to infer a defendant's possession of contraband based on circumstantial evidence. *See Jammal,* 926 F.2d at 919. For instance, in *Jammal* the court admitted evidence that defendant "was apprehended driving a car with $135,000 in the trunk" in order to suggest that it was "more than a coincidence" that, prior to the arrest, drugs were found in the defendant's trunk along with a similar amount of cash. *Id*. The court admitted the evidence even though it might have prejudicially suggested that defendant was a drug dealer. *Id*.

Such evidence may raise the risk of a conviction merely on the presumption that the defendant is a criminal by trade rather than out of the jury's genuine belief in the defendant's guilt. *Id*. However, the court can alleviate the risk of constitutional error by issuing a limiting instruction to the jury. *Id*. Juries are presumed to follow a court's limiting instruction with respect to the purposes for which evidence is admitted. *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997). When such an instruction is issued, a court presumes that no due process violation occurred. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

7

1    This presumption may be overcome, but only if there is an "overwhelming

2    probability" that the jury would be unable to disregard evidence and a strong

3    likelihood that the effect of the misconduct would be "devastating" to the

4    defendant. *Greer*, 483 U.S. at 766 n. 8 (quoting *Bruton v. U.S.*, 391 U.S. 123,

5    135-36 (1968); *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). The Supreme

6    Court has declined to extended this exception where the inadmissible evidence is

7    not facially incriminating but is only inferentially so based on other admissible

8    evidence. *Richardson*, 481 U.S. at 208.

9    **B.    Analysis**

10    The California Court of Appeal properly evaluated the trial court's

11    admission of this evidence under state law. The question is, then, whether the

12    admission of this evidence was "contrary to" federal law. *See Lockhart,* 250 F.3d

13    at 1230. This Court must determine whether the admission of the gang evidence

14    under state law violated Petitioner's due process rights.

15    The prosecution in this case presented indicia of Petitioner's gang

16    affiliation and Officer Livingston's expert testimony to suggest, as in *Jammal*,

17    that it was "more than a coincidence" that a red cloth appeared along with drugs

18    recovered from a car driven by Petitioner. *See Jammal,* 926 F.2d at 919. The

19    admission of this evidence in support of the prosecution's theory is

20    constitutionally permissible under the reasoning in *Jammal. Id.* The prosecution

21    did not present this evidence in order to establish Petitioner's membership in the

22    Norteno gang, and the trial court issued a limiting instruction to that effect. Any

23    inflammatory association created by the evidence of Petitioner's gang affiliation

24    would have been negated by the limiting instruction.

25    This case does not constitute the unique situation where the trial court's

26    limiting instruction was inadequate to address any prejudice. *See Greer*, 483

27

28                                              8

U.S. at 766 n. 8.  Therefore, Petitioner has not established that his due process rights were violated by the trial court's admission of this evidence.

Petitioner relies on *United States v. Garcia*, 151 F.3d 1243, 1245-46 (9th Cir. 1998) for the proposition that gang affiliation by itself is not a constitutionally permissible basis on which to infer any element of a conspiracy conviction.  However, *Garcia* is not on point.  The prosecution in this case offered gang affiliation evidence to infer possession of the drugs, not to support a conspiracy charge.  Thus, the state court's determination of Petitioner's evidentiary claim is not contrary to, or an unreasonable interpretation of established Supreme Court precedent.

Assuming the trial court did erroneously admit the gang affiliation evidence, the inquiry would then be whether the error had a substantial and injurious effect on the guilty verdict and whether the verdict would stand absent the erroneously admitted evidence.  *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)).

Petitioner's claim would still fail were this Court to reach this question. The evidence of gang affiliation comprised only a few lines of Officer Livingston's testimony and Petitioner only briefly revealed his tattoo to the jury. The prosecution did not strongly emphasize the indicia of gang affiliation and used it only to establish Petitioner's possession of the drugs and drug-related items.  Absent this evidence, the possession element would still find ample support in the record, notwithstanding Ms. Hernandez's contradictory testimony. The police recovered the black pouch containing a methamphetamine rock from a car Petitioner had been seen driving.  From the same vehicle, the police further recovered Petitioner's wallet containing a large amount of cash and an address book with methamphetamine residue on it.  By this evidence alone the jury

reasonably could have concluded that the black pouch and methamphetamine rock were his.  As such, Petitioner's claim fails.

**II.    CALJIC 17.41.1**

Petitioner challenges the constitutionality of CALJIC 17.41.1.  He argues that the possibility of a verdict rendered contrary to law,  known as jury nullification, is protected by the Sixth Amendment right to a trial by jury and the Due Process Clause of the Fourteenth Amendment.  As the Ninth Circuit has held explicitly, a trial court's use of CALJIC 17.41.1 is not contrary to any existing Supreme Court precedent.  *See Brewer v. Hall*, 378 F.3d 952, 955-56 (9th Cir. 2004) (rejecting under AEDPA habeas claims that the use of CALJIC 17.41.1 violates due process or the right to a trial by jury).  On the contrary, the Constitution does not protect a right to be tried by jurors who are unwilling to abide by the law and the court's instructions.  *See Id.* (citing *Lockett v. Ohio*, 438 U.S. 586, 595-96 (1978)).  Further, Petitioner does not identify any ways in which the use of the instruction or its affects on the jury in his case sets it apart from the Ninth Circuit's analysis in *Brewer*.  Therefore, Petitioner's claim fails.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: February 22, 2007

_____
JEFFERY S. WHITE
United States District Judge